## CLEMONS v. MELLON.

(Supreme Court, Appellate Division, Third Department.    March 2, 1898.)

LIBEL—EVIDENCE.

In an action for libel, consisting of publications that plaintiff had destroyed the eyesight of defendant's daughter by the use of belladonna, it appeared that plaintiff had attended defendant's daughter, and given her belladonna, and shortly afterwards she became almost totally blind.    It was undisputed that, when the loss of vision was first discovered, plaintiff and another physician attributed it to the action of the belladonna, supposing it to be temporary in its character; but when, after treatment, the eyesight did not improve, they came to the conclusion that it was not the action of the medicine. Plaintiff showed by uncontradicted expert testimony that belladonna could not cause blindness, and defendant had been told these facts by oculists whom he had consulted before the publication of the libels.    Defendant pleaded justification, and the court charged that the burden was on him to prove such fact.    Held, that the verdict in favor of defendant should be set aside, as against the weight of evidence.

Appeal from trial term.

Action by Robert N. Clemons against Daniel Mellon for libel and slander.    From a judgment for defendant, plaintiff appeals.    Reversed.

The plaintiff and appellant is a physician.    Some time in the month of September, 1895, the daughter of the defendant was taken sick, and the plaintiff was called to attend her, and, upon such attendance, prescribed medicines for her; among others, belladonna.    During such sickness, and within a few days after the administration of the belladonna, the defendant's daughter began to lose her eyesight, and shortly thereafter became, and has continued, almost totally blind.    It would appear that, when this loss of vision was first discovered, the appellant and another physician, who was called in, attributed it to the action of the belladonna, but supposed it to be temporary in character.    After it continued for some time, and remedies had been resorted to, to counteract the effects of the belladonna, they came to the conclusion that it was not temporary in its nature, and was not caused by the action of the belladonna.    The defendant, from time to time, and to various people, asserted that the blindness of his daughter had been occasioned by the treatment of the plaintiff, and by the administration of belladonna.    The plaintiff finally brought an action against ᴜne defendant for compensation for his medical services, and upon such trial the question seems to have been litigated as to whether such blindness of defendant's daughter was

caused by the administration of belladonna by the plaintiff. The jury disagreed, and shortly thereafter the defendant settled the claim. After such settlement, he caused an article signed by him to be published in the newspapers, in which he stated, in substance, that his settlement of the case was not a retraction, and reiterated his charge that the cause of his daughter's blindness was the belladonna administered by the plaintiff, and that his reasons for settling the case were that his "pocketbook will not allow one to fight the combination that the doctor has back of him." The plaintiff thereafter brought this action, which is in the nature of libel and slander both, some of the counts in the complaint being for oral statements alleged to have been made by the defendant to various persons, and others founded upon the publication in the newspapers. Many of the alleged oral utterances are admitted by the defendant, coupled with statements of other portions of the conversations. Some of the alleged conversations are denied. The defendant also pleads justification. The jury found a verdict for the defendant, and from the judgment entered upon such verdict, and from an order denying a motion for a new trial, the plaintiff appeals to this court.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Potter & Lillie (T. A. Lillie, of counsel), for appellant.
Otis A. Dennis (J. M. Whitman, of counsel), for respondent.

HERRICK, J. The trial court, in its charge to the jury, said:

"Upon the trial here, the counsel for the defendant has stated, and the trial has proceeded upon the theory, that he justifies these actions; that it was true that his daughter had been made blind by reason of a dose of belladonna. There has been no attempt to evade that issue, and the case has been tried upon the theory that it was lack of ability on the part of the plaintiff in this case. It has been announced over and over again that the plaintiff did negligently and carelessly, by reason of his lack of skill, or by the lack of some precaution on his part, administer belladonna to the daughter of the defendant by which she was made blind. The defendant having taken that position, it is incumbent upon him to sustain it. Having made that statement, the burden is upon him to show that it is true."

And again: "In order for the defendant to justify the utterance of the words, he must prove that blindness was the result of the administration of belladonna by the plaintiff. If the evidence does not satisfy your minds in that regard, he has failed in his justification. If you find, however, that that was the result, after considering the evidence, then he has sustained it."

And further: "You must pass upon the question of whether or not the words spoken were true. You must find that the belladonna administered did cause the blindness."

There were no exceptions to either of these portions of the charge, and they present to us very clearly and plainly the theory upon which the case was tried.

The court also, in speaking of the evidence, used the following language:

"You have heard the doctors give the symptoms of belladonna poisoning. I am not aware that anybody has gone upon the stand and stated that the use of belladonna would result in blindness. I think the evidence of every doctor has been that belladonna would not and could not cause blindness in any person. But you have heard the claim of the defendant that, at the time his daughter lost her sight, the doctors then said it was the result of belladonna; that the doctors then said it was the usual action of belladonna; that the pupils had become dilated, and that there would be a partial loss of vision, but that it would pass away. The testimony of the physicians is uniform as to the ordinary use of belladonna,—that the pupil dilates, that the patient will have partial loss of vision for some time, but that will gradually

pass away; and they have explained in your presence the reason why and the manner in which that is brought about, by the operation of the drug upon the system."

To these statements as to the evidence, there was also no exception taken.

Without setting forth all the words and utterances of the defendant complained of by the plaintiff, or stating any more fully than has already been stated the contents of the article published in the newspaper, it is sufficient, for the purposes of this appeal, to say that it is very clear that many of the words admitted by the defendant to have been used and published by him reflect upon the professional ability of the plaintiff, and were slanderous and libelous, in the connection in which they were used. · As we have seen from the charge of the trial court, the defense was conducted upon the theory that the defendant's charges were true, and that his daughter's blindness·had been caused by the use of belladonna, and that was the issue plainly and squarely presented to the jury.   I have examined the evidence in the case very carefully, and have come to the conclusion that the trial court was right in its statement that "the evidence of every doctor has been that belladonna would not and could not cause blindness in any person."   A number of physicians were sworn, all upon the part of the plaintiff, some of them specialists of eminence, and their testimony was uniform.   There was no dispute as to the amount of belladonna administered, no conflict of evidence in that regard, and there was no difference of opinion as to the result that had been or could be brought about by such use of that drug; so that there was not only no evidence to support the contention of the defendant that his daughter's blindness had been produced by the use of belladonna, but the evidence was overwhelmingly against that contention.

It is true, when the loss of vision was first discovered, the physician who was called in attributed that loss of vision to the effects of belladonna, and, after examination and inspection, the plaintiff concurred in that opinion; but at that time the loss of vision was supposed to be the temporary one commonly occasioned by the use of that medicine, which theory was abandoned by them when they found that the loss of vision continued, and the girl was becoming permanently blind.   This seems to have been explained to the defendant, and, upon his consulting oculists, he was informed that his daughter's blindness had not and could not have been caused by the use of belladonna; but, notwithstanding this advice, he appears to have continued his charges against the plaintiff, and for these later utterances, coupled with the fact, which seems to be thoroughly well established, that her blindness was not caused by the use of the drug in question, the justification sought to be established by the defendant, I think, has failed; and the verdict should be set aside, as against the weight of evidence, and a new trial granted, with costs to abide the event.   All concur.